UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW PENNING,

    Plaintiff,

v.

LIBERTY LEGAL GROUP INC., et al.,

    Defendants.
_____/

Case No. 1:22-cv-204

Hon. Hala Y. Jarbou

## **OPINION**

Plaintiff Matthew Penning brought this action against Defendants Liberty Legal Group Inc. ("LLG"), Liberty Credit Management Inc. ("LCM"), and Mitchell Steven Evans, asserting various claims under state and federal law. Before the Court are Plaintiff's motion for entry of default judgment (ECF No. 17) and his motion for attorney's fees and costs (ECF No. 21). For the reasons herein, the Court will grant the motions.

### I. BACKGROUND

**A. Parties**

Plaintiff is a resident of Michigan. He alleges that he was a victim of "credit identity theft," meaning that his "personal and financial information was used to create a counterfeit account and non-existent debt." (Am. Compl. ¶ 1, ECF No. 10.)

Defendant Mitchell Steven Evans is a resident of California. Plaintiff alleges that Evans has registered with Orange County, California, to do business using various fictitious names, including: "Verity Law Group," "Imperial Law Group," "United Law Group," "United Court Services," "Liberty Billing Solutions," and "Liberty Credit Management." (*Id.* ¶¶ 17-22.)

Plaintiff alleges that Evans anonymously registered various domain names that are similar to his fictitious business names, including the following:

- libertylegalgrp.com, which linked to a website for "Liberty Legal Group"; the website said that LLG was a "credit reporting agency" located at "2929 Westminster Ave #1753, Seal Beach, CA." (Ex. A to Am. Compl., ECF No. 10-1.) The website contained a link for liberty-billing.com. (Am. Compl. ¶ 23.)

- liberty-billing.com, which linked to a website for "Liberty Billing Solutions," a "full service billing company processing . . . payment[s] associated with Liberty Legal Group." (Ex. B to Am. Compl., ECF No. 19-2.)

- libertybilling.net, which linked to a website for "Liberty Billing," a "full service billing company processing . . . payments associated with Verity Legal Group." (Am. Compl. ¶ 24.)

- veritylg.com, which linked to a website for "Verity Legal Group," also located at "2929 Westminster Boulevard, Seal Beach, California." (*Id.* ¶ 25.) That website contained a link for libertybilling.net. (*Id.*)

- imperiallaw.net, which linked to a website for "Imperial Law Group," also located at "2929 Westminster Avenue, Seal Beach, California." (*Id.* ¶ 27.) That website contained a link to "Check the Status of Your Case Online," which directed to www.Liberty-Billing.com. (*Id.*)

- unitedcourtservices.com, which linked to a website for "United Court Services," an entity that purported to "enforce and file civil cases using the court system." (*Id.* ¶ 28.)

2

- libertybillingsolutions.com, which linked to a website for "Liberty Billing Solutions," located at "7111 Garden Grove Boulevard, Suite 119, Garden Grove, California." (*Id.* ¶ 29.)

- libertycredit.net, which linked to a website for "Liberty Credit Management," a "Professional Debt Collection Company," also located at "7111 Garden Grove Boulevard, Suite 119, Garden Grove, California." (*Id.* ¶ 30.)

LLG is a California corporation formed in November 2021. (*Id.* ¶ 10.) On February 24, 2022, Evans filed a "statement of information" with the State of California, representing that he was the Chief Executive Officer, Secretary, Chief Financial Officer, and Director of LLG. (California Sec'y of State – LLG Statement of Information, ECF No. 19-2, PageID.176-177.)

LCM is a California corporation formed in January 2022. (Am. Compl. ¶ 12.) In February 2022, the City of Garden Grove, California, issued a license to LCM and Evans, LCM's "sole owner," to operate a "collection agency" at 7111 Garden Grove Boulevard, Garden Grove, California. (*Id.* ¶ 13.)

### B. Plaintiff's Debt

On October 30, 2012, Plaintiff obtained a short-term loan of $600.00 from CNU of Michigan, LLC, which was doing business as CashNetUSA. (*Id.* ¶ 43.) The loan had a term of fourteen days. Plaintiff was unable to repay the loan and defaulted. In May 2013, CashNetUSA "charged off the account and related alleged debt" to National Credit Adjusters, L.L.C. ("NCA"), in the amount of $686.16. (*Id.* ¶ 47.) NCA continues to own the debt. Penning refuses to pay the debt and asserts that it is no longer collectible because of Michigan's six-year statute of limitations.

### C. Defendants' Conduct

After CashNetUSA sold Plaintiff's debt, Plaintiff's personal and financial information were "compromised" and "have been periodically and repeatedly sold and resold to various entities

3

around the country[.]" (*Id. ¶ 52.*) Those entities use his information to create "fake accounts" and falsely threaten Plaintiff with criminal and civil consequences in order to "extort payment" from him. (*Id.*)

In February 2022, Defendant Evans sent a letter addressed to Plaintiff to the home of Plaintiff's parents. (*Id.* ¶ 55.) The letter identified the sender as "LIBERTY LEGAL GROUP" and purported to notify Plaintiff of an impending lawsuit against him for "NSF FRAUD." (*Id.*) It asserted that Plaintiff owed $1,310.28 for a loan originating with CashNetUSA, and it directed him to pay the debt online at www.libertylegalgrp.com. (*Id.*)

In March 2022, Penning obtained the letter from his mother. He then went to the website at www.libertylegalgrp.com and followed a link to www.liberty-billing.com. Plaintiff then entered a "file number" identified in the letter and reached a page asserting that he was subject to a "pending legal action" and owed $1,3010.28 to CashNetUSA. (*Id.* ¶ 58.) Plaintiff called a 1-800 number in the letter and reached a recorded message for Liberty Legal Group. After Plaintiff pressed "1" in the phone menu, Plaintiff reached an employee of Defendants who identified himself as "Dan."[1] (*Id.* ¶ 59.) Dan asserted that Defendants represented CashNetUSA and that Plaintiff owed $1,310.28, but that Plaintiff could have the lawsuit against him dismissed by paying $623.28. (*Id.*) Thus, Plaintiff alleges that Defendants attempted to collect a debt from him that he does not owe because the statute of limitations for collecting on that debt has expired.

## II. CLAIMS

Based on the facts above, Plaintiff contends that Defendants violated multiple provisions of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, et seq. Plaintiff also contends that Defendants violated the Driver's Privacy Protection Act of 1994 (DPPA), 18 U.S.C.

---

[1] Evans uses the name "Dan Grady" when communicating with consumers. (Am. Compl. ¶ 16.)

§ 2721, et seq., by obtaining information about Plaintiff from his vehicle record for an improper purpose.[2]

### III. PROCEDURAL HISTORY

Plaintiff filed his complaint on March 8, 2022. Plaintiff served the summons and complaint on LLG and LCM on May 11, 2022. (Summons, ECF No. 5.) Those defendants did not respond. Plaintiff did not serve Defendant Evans within the time required by the Federal Rules of Civil Procedure, so the Court dismissed him as a defendant. (6/9/2022 Order, ECF No. 7.)

Plaintiff applied for entry of default against LCM and LLG, and the Clerk entered a default on June 21, 2022. Plaintiff filed an amended complaint naming Evans, LLG, and LCM as Defendants on August 1, 2022. He served the amended complaint on Evans on August 13, 2022, via U.S. mail, restricted delivery, to Evans's home address in Westminster, California. (Evans Summons, ECF No. 13.) Evans acknowledged receipt of that package with his signature. (Evans Signature, ECF No. 19-10, PageID.207.) Evans did not answer or otherwise respond to the amended complaint.

Plaintiff also served the amended complaint on LLG and LCM via U.S. mail to their registered agent. (Rogers Decl. ¶ 6, ECF No. 19-8.) They did not answer or otherwise respond to the amended complaint.

Plaintiff applied for entry of default against Defendant Evans, and the Clerk entered default on October 14, 2022. Plaintiff then filed his motion for default judgment.

Noting that Plaintiff had not adequately explained the means of service he used, the Court directed Plaintiff to show cause why the Court should not deny his motion for failure to demonstrate proper service. (11/10/2022 Order, ECF No. 18.) Among other things, the Court

---

[2] Plaintiff also asserts claims under state law, but he does not seek a default judgment for those claims.

5

noted that Plaintiff had failed to provide a copy of the return receipt signed by Evans, as required by Michigan Court Rules.  (*Id.* at 2.)

Plaintiff responded to the Court's order, providing additional evidence and explanation. (Pl.'s Resp., ECF No. 19.)  Satisfied with that explanation, the Court dismissed its order to show cause.

### IV. DEFAULT JUDGMENT STANDARD

Rule 55(b)(1) of the Federal Rules of Civil Procedure governs Plaintiff's application for entry of default judgment:

> *By the Clerk.*  If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk--on the plaintiff's request, with an affidavit showing the amount due--must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

Fed. R. Civ. P. 55(b)(1).  This part of Rule 55(b) applies because Defendants have not appeared in the case and Plaintiff's claim is for a "sum certain or a sum that can be made certain by computation[.]"

Here, the Clerk apparently did not grant Plaintiff's request because the amount of damages requested by Plaintiff in his amended complaint does not match the amount in his motion. However, Plaintiff makes clear in his motion that he seeks only specific amounts of damages permitted by the FDCPA and the DPPA.  The former permits statutory damages of $1,000.  15 U.S.C. § 1692k(a)(2)(A).  The latter permits "actual damages, but not less than liquidated damages in the amount of $2,500[.]"  18 U.S.C. § 2724(b)(1).  Thus, Plaintiff seeks a damages award of $3,500.  That award is supported by the allegations of the amended complaint and is appropriate here.

Accordingly, the Court will enter a default judgment against Defendants for $3,500.00.

## V. ATTORNEY'S FEES

Separately, Plaintiff moves for an award of attorney's fees. The FDCPA and DPPA both provide that a prevailing plaintiff can recover costs and reasonable attorney's fees. *See* 15 U.S.C. § 1692k(a); 18 U.S.C. § 2724(b)(3). The starting point for calculating reasonable attorney's fees is the lodestar method: "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

In an affidavit, Plaintiff's attorney asserts that he spent 30.1 hours on the matter and charges a rate of $425 per hour, resulting in a total fee of $12,792.50. Other judges in this district have approved the same rate for counsel's work in similar cases. *See Hitsman v. Final Resolutions, LLC*, No. 1:21-cv-102 (W.D. Mich.); *Meade v. Boone*, No. 1:21-cv-6 (W.D. Mich.). This Court also finds that this rate, as well as the hours expended, are reasonable. Plaintiff requests costs of $847.10, which is also reasonable. Accordingly, the Court will grant Plaintiff's motion for attorney's fees and costs.

## VI. CONCLUSION

In summary, the Court will grant Plaintiff's motion for default judgment and motion for attorney's fees and costs. The Court will enter an order and judgment consistent with this Opinion.

Dated: May 8, 2023    /s/ Hala Y. Jarbou
                      HALA Y. JARBOU
                      CHIEF UNITED STATES DISTRICT JUDGE